ALLIANCE SHIPPERS, INC., Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant.

Civ. A. No. 86 3837 TJH.

United States District Court, C.D. California.

Nov. 17, 1986.

---

Sherman Doctrow, Grove Jaskiewicz Gilliam & Cobert, Encino, Cal., Ronald N. Cobert, Grove Jaskiewicz Gilliam & Cobert, Washington, D.C. for Alliance Shippers, Inc.

John MacDonald Smith, Ann Fingarette Hasse, Carol A. Harris, San Francisco, Cal., for Southern Pacific Transp. Co.

SOUTHERN PACIFIC'S AMENDED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

HATTER, District Judge.

Defendant Southern Pacific Transportation Company ("SP") hereby submits its proposed Statement of Uncontroverted Facts and Conclusions of Law as required by Local Rule 7.14.1.

For the purpose of SP's Motion for Summary Judgment, and for that purpose only, SP is adopting as facts those alleged by plaintiff Alliance Shippers, Inc. ("Alliance") in its Complaint.

A. *Uncontroverted Facts*

1. Alliance is a New Jersey corporation with its principal place of business in New Jersey. (Complaint, ¶ 4.)

2. SP is a Delaware corporation with its principal place of business in San Francisco. (Complaint, ¶ 6.)

3. Alliance is a shippers' agent and is a customer of SP. A shippers' agent is a company which assembles multiple trailer-load shipments and purchases transportation from a rail carrier. (Complaint, ¶s 3(b), 5.) Shippers' agents procure trailers from a variety of shippers (known as "beneficial owners"); those trailers may contain freight-all-kinds, canned goods, wine and other commodities. (Complaint, ¶ 12.)

4. The transportation which Alliance purchases is "TOFC service". TOFC service means

> "Trailer-on-flatcar (TOFC) service" means the transportation on a railcar, in interstate or foreign commerce, of (i) any freight-laden highway truck, trailer or semi-trailer (or container portion of any highway truck, trailer or semi-trailer having a demountable chassis), or (ii) any empty highway truck, trailer or semi-trailer (or the container portion of any highway truck, trailer or semi-trailer having a demountable chassis) when such empty equipment is being transported incidental to its prior or subsequent use in TOFC service. (Complaint, ¶ 3(a), 5.)

The TOFC service which the railroad provides is only a portion of the total movement; motor carriers are used to locally transport the trailers between rail ramps and the points of actual origin or ultimate destination. (Complaint, ¶ 13.) Shippers' agents deal directly with the railroads for the provision of TOFC service (Complaint, ¶ 14).

5. SP provides TOFC service to the shipping public including Alliance and other similarly situated shippers' agents. (Complaint, ¶ 7.)

6. On March 19, 1981, the Interstate Commerce Commission ("ICC") exempted TOFC service from the provisions of 49 U.S.C. Subtitle IV (the Interstate Commerce Act). (Complaint, ¶ 16.)

7. After TOFC service was deregulated, SP negotiated and entered into numerous volume contract arrangements with ship-pers' agents including Alliance for the provision of TOFC service. (Complaint, ¶ 16.)

8. SP separately and individually contracted with certain shippers' agents to provide them with rates, terms and conditions for TOFC service more favorable than those provided to Alliance, even though Alliance was similarly situated. (Complaint, ¶ 8.)

9. Interstate Consolidation Service, Inc. ("Interstate") is one of the "favored shippers." (Complaint, ¶ 10.)

10. SP offered rates, rebates, discounts or allowances to Alliance which were less favorable than the rates, rebates, discounts or allowances made to "favored shippers". (Complaint, ¶ 19a.)

11. SP repeatedly denied to Alliance that it had provided more favorable rates, rebates, discounts or allowances to other shippers' agents. (Complaint, ¶ 19(b).)

12. SP repeatedly refused to make those more favorable rates, rebates, discounts and allowances available to Alliance. (Complaint, ¶ 19(c).)

13. SP extended "secret" rebates, refunds, commissions or unearned discounts and special services to certain shippers, but not to Alliance. (Complaint, ¶ 22.)

### B. Conclusions of Law

1. Prior to the passage of the Staggers Act, carriers were heavily regulated by the Interstate Commerce Act and closely monitored by the ICC. Among other things, carriers were required to offer uniform rates to the shipping public, and, consequently, carriers were forbidden to give rebates to shippers (former 49 U.S.C. § 10741).

2. The Staggers Act was passed in 1980 as a result of the severe economic deterioration experienced by the railroad industry. To reverse that trend, Congress determined to free carriers from regulation as much as possible and to allow competition and the demand for services to establish reasonable rates for rail transportation. (49 U.S.C. § 10101a, 1980 *U.S.Code Cong. & Admin. News*, pp. 3978, 4120.)

3. The Staggers Act instituted two innovations which are pertinent here: (1) the right to make individual contracts for regulated traffic (49 U.S.C. § 10713) and (2) the authority of the ICC to exempt certain traffic from any regulation under Subtitle IV of Title 49 of the U.S. Code, which is the Interstate Commerce Act (49 U.S.C. § 10505).

4. When a carrier enters into a contract with a shipper for regulated service pursuant to 49 U.S.C. § 10713, it becomes a contract carrier. 1980 *U.S.Code Cong. & Admin.News*, p. 4132, 49 U.S.C. § 10713(i)(1).

■ 5. Once the ICC approves a contract under Section 10713, the contract is no longer governed by the Interstate Commerce Act (Subtitle IV of Title 49 of the U.S. Code), and thus is not subject to the prohibition against rate discrimination. Instead, it becomes like any other contract made between two parties and, as such, is subject to the antitrust laws. *Ibid.;* § 10741(f).

6. Once the ICC exempts a service pursuant to 49 U.S.C. § 10505, that service is no longer subject to the provisions of Subtitle IV of Title 49 and thus is not subject to the non-discrimination provisions of Section 10741. 49 U.S.C. § 10505(a). Exempt service such as TOFC service is, however, subject to the antitrust laws (*Improvement of TOFC/COFC Regulation,* 364 I.C.C. 731, 736 (1981); *American Trucking Associations v. I.C.C.,* 656 F.2d 1115, 1126 (5th Cir.1981)) except where the ICC has exclusive jurisdiction. *See* Conclusions of Law No. 13.

■ 7. Section 1 of the Sherman Act only prohibits those contracts, combinations or conspiracies which unreasonably restrain trade. *Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1980); *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482, 1489 (3rd Cir.1985), *vacated on other grounds sub. nom. Ford Motor Co. v. Tunis Bros. Co.,* 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed. 2d 909 (1986).

■ 8. A contract between two parties to set the price of services between themselves is not an unreasonable restraint of trade. *Proctor v. State Farm Mut. Auto Ins. Co.,* 675 F.2d 308, 337 (D.C.Cir. *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed. 2d 81 (1982)); *Quality Auto Body, Inc. v. Allstate Ins. Co.,* 660 F.2d 1195, 1203 (7th Cir.1981), *cert. denied* 455 U.S. 1020, 102 S.Ct. 717, 72 L.Ed.2d 138 (1982).

■ 9. The fact that certain shippers negotiated more favorable rates than their competitors, without more, does not constitute an unreasonable restraint of trade. *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870 (9th Cir.1981), *cert. denied* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983); *National Tire Wsle., Inc. v. Washington Post,* 441 F.Supp. 81 (D.C.1977), *aff'd.* 595 F.2d 888 (D.C.Cir.1979).

10. Furthermore, SP is entitled to decide with whom it wants to deal and on what terms. *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

11. Therefore, the Uncontroverted Facts do not establish a Sherman Act Section 1 cause of action, and Count One of the Complaint must be dismissed.

■ 12. Nor is there any claim under 15 U.S.C. § 13 (the Robinson-Patman Act), because the Robinson-Patman prohibition against price discrimination between similarly situated purchasers of like commodities does not apply to transportation since transportation is not a commodity. *See, e.g., Baum v. Investors Diversified Services, Inc.,* 409 F.2d 872 (7th Cir.1969); *Fleetway, Inc. v. Public Service Interstate Transp. Co.,* 72 F.2d 761 (3rd Cir.1934).

■ 13. Under 49 U.S.C. § 10505, the ICC has exclusive jurisdiction over the rates and practices of carriers engaged in exempt transportation service. *Consolidated Rail Corporation—Declaratory Order—Exemption,* — I.C.C. — (March 5, 1986); *G. & T. Terminal Packaging Co., Inc. v. Consolidated Rail Corporation,* 646 F.Supp. 511 (D.N.J.1986).

14. There is no revival of federal common law when a service is exempted. *Ibid.*

15. Alliance's sole remedy is to go to the ICC to seek revocation of the TOFC exemption. *Ibid.*

16. Section 10505, which allows the ICC to exempt services from regulation, specifically provides that a carrier's liability for damaged goods must be consistent with the provisions of 49 U.S.C. § 11707, which incorporated the carriers' common law responsibilities for liability. 49 U.S.C. § 10505(e). In order to carry out the intent of that provision, two district courts have utilized federal common law to supplement the statutory authority because there is no other applicable body of law. *Co-Op Shippers v. Atchison, Topeka and Santa Fe Railway,* 613 F.Supp. 788 (D.C.Ill.1985), *appeal pending; Quasar v. Atchison, Topeka and Santa Fe Ry. Co.,* 632 F.Supp. 1106 (N.D.Ill.1986).

17. Section 10505 does not make any parallel provision requiring that carriers must offer uniform or non-discriminatory rates for an exempt service or that carriers must offer similarly situated shippers the same rates.

18. In this case, even if it had jurisdiction, which it does not, the court would have no need to apply federal common law on issues involving restraint of trade because there is already a body of law which governs those issues: the antitrust laws. As concluded above, however, Alliance cannot establish any antitrust violation on these Uncontroverted Facts.

19. Based upon Conclusions of Law Nos. 13 through 18, Count Four of the Complaint must be dismissed.

20. The state causes of action cannot stand because state regulation of intrastate transportation is preempted by the Staggers Act. *State of Texas v. United States,* 730 F.2d 339, 347 (5th Cir.), *cert. denied* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984); *U.S.Code Cong. & Admin.News* 4110 (1980).

21. The state causes of action cannot stand because California has no jurisdiction to regulate intrastate transportation. Ex Parte No. 33, *State Intrastate Rail Rate Authority,* 365 ICC 700, 701 (1982); *Mendocino Coast Railway, Inc. Discontinuance of Train Service in Mendocino County,* served August 27, 1986, petition for review pending (D.C.Cir.).

22. That state causes of action cannot stand because the state cannot regulate where a federal agency has expressly deregulated. *Transcontinental Gas Pipe v. State Oil and Gas Bd.,* 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986); *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n.,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983).

23. For the reasons stated in Conclusions of Law 20, 21, and 22, Counts Two, Three and Five of the Complaint must be dismissed.

## JUDGMENT

This cause came on to be heard on defendant Southern Pacific Transportation Company's motion for summary judgment pursuant to F.R.Civ.P. 56(b).

Based upon the Uncontroverted Facts and Conclusions of Law entered by this Court,

IT IS ORDERED that the Complaint in this action be, and hereby is, dismissed in its entirety with prejudice.