ALLIANCE SHIPPERS, INC.,
Plaintiff–Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY,
Defendant–Appellee.

No. 86–6716.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1987.

Decided Oct. 3, 1988.

568

Ronald N. Cobert, Grove, Jaskiewicz, Gilliam & Cobert, Washington, D.C., for plaintiff-appellant.

Ann Fingarette Hasse, Charles Ferguson & Co., Inc., San Francisco, Cal., for defendant-appellee.

Before BROWNING, FLETCHER and POOLE, Circuit Judges.

PER CURIAM:

Alliance Shippers, Inc. is a shipping agent engaged in the business of assembling truckload shipments from various shippers and arranging transportation for these shipments to their destinations. In the course of its business, Alliance purchases trailer-on-flatcar (TOFC) service from railroads such as Southern Pacific.

The Interstate Commerce Commission exempted TOFC service from regulation pursuant to authority conferred by Congress in Section 213 of the Staggers Rail Act of 1980, 49 U.S.C. § 10505 (1982). *See Improvement of TOFC/COFC Regulation*, 364 I.C.C. 731 (1981), *aff'd, American Trucking Ass'ns v. Interstate Commerce Comm'n*, 656 F.2d 1115 (5th Cir.1981). After discovering other shipping agents were receiving more favorable rates from Southern Pacific, Alliance filed this suit alleging federal common law and state statutory price discrimination claims and federal and state antitrust claims. Southern Pacific filed a motion for summary judgment. Southern Pacific stated that "for the purpose of Southern Pacific's Motion for Summary Judgment ... Southern Pacific is adopting as facts those alleged by plaintiff Alliance Shippers, Inc. in its Complaint." Thus, the motion was in substance a rule 12(b)(6) motion to dismiss. The district court granted the motion. *See Alliance Shippers, Inc. v. Southern Pacific Trans. Co.*, 673 F.Supp. 1005 (C.D.Cal.1986). This appeal followed.

I.

Alliance challenges the district court's conclusion that Alliance's causes of action for price discrimination under federal common law and state statutory law were preempted by the Staggers Act. The district court held the Staggers Act was intended to deregulate the railroad industry to the maximum extent possible and allowing federal common law or state statutory actions for price discrimination would contravene the purpose of the Act.

A.

Alliance argues that when service is exempted from regulation by the Commission under Section 10505, Congress intended to revive as to the exempted service a common law remedy for violation of an obligation imposed on common carriers to charge the same rate to all shippers. The Third Circuit confronted this issue in *G. & T. Terminal Packaging Co. v. Consolidat-*

ed Rail Corp., 830 F.2d 1230, 1233–36 (3rd Cir.1987). In a well-reasoned opinion, the court concluded that allowing a common law remedy for discrimination in rates for providing exempted services "would have the effect of substituting a court's regulation for the Commission's decision in favor of deregulation," (id. at 1235), and would be contrary to the language, purpose, and expressed intent of Congress.[1] We adopt the Third Circuit's analysis.[2]

Alliance advances two arguments not dealt with by the Third Circuit.

Alliance finds support for a common law remedy in the statutory policy "prohibit[ing] unlawful discrimination." 49 U.S.C. § 10101a(13). Nothing in the statute or its legislative history suggests Congress intended to rely for enforcement of this policy upon a common law remedy against price discrimination. To the contrary, the statute provides the ICC with power to remedy unlawful discrimination. See 49 U.S.C. §§ 10713(d)(2), (d)(3)(B); 10741; see also H.R.Rep. No. 1035, 96th Cong., 2d Sess. 40, reprinted in 1980 U.S.Code Cong. & Admin.News 3978, 3985. The ICC may also revoke its exemption. 49 U.S.C. § 10505(d).

Alliance relies on cases regarding the preemptive effect of rate deregulation on the liability of air and motor carriers for damaged goods. See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, 767 F.2d 425 (8th Cir.1985); Ruston Gas Turbines, Inc. v. Pan American World Airways, 757 F.2d 29 (2d Cir.1985);

First Penn. Bank v. Eastern Airlines, Inc., 731 F.2d 1113 (3rd Cir.1984). In these cases, the courts concluded a judicial remedy for damage to goods was consistent with the regulatory scheme involved.[3] In contrast, a court remedy for discriminatory rates is inconsistent with the purpose of the Staggers Act.

### B.

We also reject Alliance's contention that the district court erred in holding that Alliance's claims under sections 17045 and 2170 of the California Civil Code prohibiting rebates, discounts, and rate discrimination by common carriers were also preempted by the Staggers Act.[4] All of the arguments advanced by Alliance were dealt with by the Third Circuit in rejecting the similar contention that the Staggers Act did not preempt common law remedies. G. & T. Terminal Packaging Co., 830 F.2d at 1233–34.

The Conference Report expressly confirms the district court's interpretation: "No state law ... remedies are available." H.Conf.Rep. No. 1430, 96th Cong., 2d Sess. 106, reprinted in, 1980 U.S.Code Cong. & Admin.News 4110, 4138. The statute's general savings clause (49 U.S.C. § 10103) does not permit state remedies. As the Third Circuit pointed out, section 10103 preserves existing remedies "[e]xcept as otherwise provided in this subtitle"; and, as explained in the Conference report, section 10501(d) expressly preempts state statu-

---

**1.** This is also the Commission's view. See Consolidated Rail Corp.—Declaratory Order—Exemption, 1 I.C.C.2d 895 (1986).

**2.** Like the Third Circuit, we assume a remedy for price discrimination existed at common law, although this is far from clear. See, e.g., American Trucking Ass'ns. v. Atchison, Topeka & Santa Fe Ry. Co., 387 U.S. 397, 406, 87 S.Ct. 1608, 1613, 18 L.Ed.2d 847 (1967); Pennsylvania R.R. Co. v. International Coal Mining Co., 230 U.S. 184, 200–01, 33 S.Ct. 893, 57 L.Ed. 1446 (1913); Interstate Commerce Comm'n v. Baltimore & Ohio R.R. Co., 145 U.S. 263, 275–76, 12 S.Ct. 844, 847–48, 36 L.Ed. 699 (1892); 1 F. Darnieder & W. Culver, Federal Liabilities of Carriers § 52, at 147–48 (2d ed. 1929). Indeed, the Interstate Commerce Act was passed specifically to reme-

dy the inadequacies of the common law in this respect. See Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 439, 27 S.Ct. 350, 355, 51 L.Ed. 553 (1907).

**3.** The same appears true of rail carriers. Congress expressly provided that exemption of rail carriers from regulation should not "relieve any rail carrier from an obligation to provide contractual terms for liability and claims which are consistent with ... section 11707." 49 U.S.C. § 10505(e).

**4.** Alliance suggests Southern Pacific should be bound by its stipulation that California law governs its TOFC services. The question we address, however, is not which state law to apply, but whether state law can apply.

tory remedies. *G. & T. Terminal Packing,* 830 F.2d at 1234 (emphasis added).

## II.

Antitrust remedies unquestionably survived deregulation. Indeed the availability of antitrust remedies was a motivating factor in ICC's decision to exempt TOFC services. *See American Trucking Ass'ns v. Interstate Commerce Comm'n,* 656 F.2d 1115, 1126 (5th Cir.1981); *Improvement of TOFC/COFC Regulation,* 364 I.C.C. 731, 736 n. 2 (1981). The question here is whether Alliance sufficiently alleged an antitrust violation to survive a motion to dismiss.[5]

Alliance alleged certain of its competitors had separately "combined and conspired" with Southern Pacific to ensure "Southern Pacific would offer to Alliance only such rates, rebates, discounts or allowances ... that were higher than the rates, rebates, discounts" made available to the particular competitor. The district court dismissed Alliance's claim on the ground that, "The fact that certain shippers negotiated more favorable rates than their competitors, without more, does not constitute an unreasonable restraint of trade."

■ The district court relied primarily on *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870 (9th Cir.1982). We held in *Zoslaw* that vertical arrangements resulting in price discrimination are not per se violations of Section 1 of the Sherman Act. *Id.* at 886.[6] We further held that such arrangements may violate Section 1 under a rule of reason analysis if a "balancing of the competitive evils of the restraint against the anticompetitive benefits asserted on its behalf," *id.* at 886–87 (citation omitted), leads to the conclusion that the restraint imposed upon competition is unreasonable. *See also Wilcox v. First Interstate Bank,* 815 F.2d 522, 528 (9th Cir.1987) ("A two-tier pricing system is not inherently non-competitive unless it can be shown to be related to an anti-competitive argreement.")

■ An essential element of a Section 1 violation under the rule of reason is injury to competition in the relevant market. *See National Soc'y of Professional Eng'rs v. United States,* 435 U.S. 679, 690–91, 98 S.Ct. 1355, 1364–65, 55 L.Ed.2d 637 (1978); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,* 786 F.2d 1400, 1405–06 (9th Cir.1986). Alliance alleged no injury to competition in the market for TOFC services; Alliance alleged only injury to itself. But the antitrust laws protect competition, not competitors. *See McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811–812 (9th Cir.1988). Alliance's "failure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings." *Id.* at 813; *see also Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 734–36 (9th Cir.1987); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 250–51 (2d Cir.1985).

■ Alliance argues the district court should have granted a continuance to permit further discovery or allowed Alliance to amend its complaint.

"[T]he party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Continental Maritime v. Pacific Coast Metal Trades Dist. Council,* 817 F.2d 1391, 1395 (9th Cir.1987) (citation omitted). Alliance's motion for continuance failed to identify the evidence it sought, or indicate how deposing Southern Pacific's declarants would have aided its opposition to summary judgment.

Alliance did not move for leave to amend. Relying on *Johnson v. Mateer,* 625 F.2d 240 (9th Cir.1980), Alliance argues the district court should have treated its affidavit filed in opposition to summary judgment as a motion to amend and granted it an oppor-

---

**5.** Although Alliance alleged antitrust violations under both federal and state law, we consider both claims under the federal standard since the parties agree the two standards are the same. *See McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 n. 4 (9th Cir.1988).

**6.** A vertical restraint is not per se illegal under Section 1 unless it includes an agreement on price or price levels, *see Business Electronics Corp. v. Sharp Electronics Corp.,* — U.S. —, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988), and no such agreement is asserted in this case.

tunity to amend. *Johnson* granted relief to a *pro se* plaintiff, who was also a criminal defendant, because his affidavit in opposition to summary judgment contained allegations of fact which, read with the complaint, raised a question as to whether there was a triable issue of material fact. Alliance made no allegations in its papers suggesting the existence of a triable issue of fact as to injury to competition in the market for TOFC services. Indeed, Alliance did not indicate how it proposed to amend its complaint.

AFFIRMED.