**Judith THOMAS–LAZEAR; Steven R. Reed; European Overseas Bank Limited, Plaintiffs–Appellants,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant,**

and

**John Shockey; Robert Kilbane, Defendants–Appellees.**

No. 87–5695.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1988.

Decided July 11, 1988.

Randolph M. Hammock, Chelski, Hammock & Hedges, Los Angeles, Cal., for plaintiffs-appellants.

Donna R. Eide, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Before TANG, FLETCHER and PREGERSON, Circuit Judges.

TANG, Circuit Judge:

Thomas–Lazear, Reed, and European Overseas Bank, Ltd. (EOBL) appeal summary judgment for federal defendants Shockey and Kilbane in their *Bivens* action. Appellants contend that federal officials conspired to defame them by making false statements to banking officials in the Mar-

shall Islands, leading to a denial of their request for an extension of their banking license in violation of due process. The district court granted summary judgment on the ground that the Appellants had no liberty or property interest in the bank license and alternatively the United States federal officials were entitled to qualified immunity. We affirm.

## BACKGROUND

In June 1984, Judith Thomas–Lazear and Steven Reed purchased EOBL from the W.F.I. Corporation under an agreement providing that if the Government of the Marshall Islands changed its banking laws "during the pendency of an application or after the purchase of the Bank" such change would be binding on the purchaser and not grounds for rescission.

In December 1984, the Republic of the Marshall Islands adopted emergency Off–Shore Banking Rules and Regulations which provided that licenses issued under the old rules would expire on February 28, 1985, and that any bank that had not applied for a renewal license would be considered dissolved as of that date. Banking Regs. § VI(1). Thomas–Lazear submitted her renewal application on January 23, 1985. She asked for an extension until July 1, 1985 to comply with the regulation requiring capital of $250,000. Banking Regs. § VIII. On April 29, 1985 the Marshall Islands Registrar of Corporations advised her that he had denied her application.

Thomas–Lazear, Reed and EOBL filed suit against (among others) Shockey, an attorney for the Comptroller of Currency, Department of Treasury, and Kilbane, an FBI agent in charge of the South Seas Off–Shore Banking and White Collar Crime Division. The claims relevant to this appeal are that Shockey and Kilbane exerted political and economic pressures on officials of the Republic of the Marshall Islands to persuade them to revoke EOBL's bank charter, and that they defamed Thomas–Lazear and Reed in the process. These actions allegedly violated Thomas–Lazear's and Reed's fifth amendment rights to due process.

The Appellants sought to file a third amended complaint to add the United States as a party and to assert claims of invasion of privacy (false light) and negligent infliction of emotional distress. The district court held these claims were barred by 28 U.S.C. § 2680(h) and denied the motion. The district court granted summary judgment on the claims against federal officials Shockey and Kilbane. Thomas–Lazear and Reed timely appeal.

## DISCUSSION

I. Summary Judgment—Property or Liberty Interest

A grant of summary judgment is reviewed de novo. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629–30 (9th Cir.1987). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one that is relevant to an element of a claim or defense whose existence might affect the outcome. *T.W. Elec. Serv.*, 809 F.2d at 630. If the moving party demonstrates the absence of a genuine issue of fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986), the opposing party may not rely on mere allegations in the pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 & n. 19, 88 S.Ct. 1575, 1593 & n. 19, 20 L.Ed.2d 569 (1968).

■ It is clear that the violation of constitutional rights by federal agents gives rise to a federal cause of action against the officials for damages. *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The key question in this case is whether the Appellants had a property or liberty interest in the bank license. We conclude that they did not.

Supreme Court decisions indicate that a protected property interest exists only

when there is a legitimate claim of entitlement beyond a "mere subjective 'expectancy.'" *Perry v. Sinderman*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). The claim of entitlement may arise from an independent source in state or federal law, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972), or from a mutually explicit understanding created by the representations of government officials, *Perry*, 408 U.S. at 601–602, 92 S.Ct. at 2700. Thomas–Lazear and the Government disagree about the proper interpretation of the Off–Shore Banking Regulations and the "informal assurances" given to Thomas–Lazear as to the perpetual operation of EOBL.

When regulations establish standards for issuing and revoking licenses a constitutionally protected property interest may arise. *See Doran v. Houle*, 721 F.2d 1182, 1185 (9th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984). But if the government which is the source of the interest in question retains unrestricted discretion over future enjoyment of the interest there is no protected entitlement. *See Bishop v. Wood*, 426 U.S. 341, 344–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984).

There is no question that the International Bank Purchase Agreement clearly states that the laws of the Marshall Islands could change at any time and that the new laws would be binding on the purchaser. What is disputed is which sections of the December 1984 regulations applied to Thomas–Lazear's application.

The Off–Shore Regulations say that corporations with licenses must make renewal applications by February 28, 1985 and that they must meet all requirements of section VII as well as file financial statements dated within four months prior to the last day of February. Banking Regs. § VI(2). This section gives no standards for the decision of the Registrar on the renewal application. *Compare* Section IV(1) (an initial license may be denied if "the Registrar is of the opinion that it would not be in the public interest that the license should be

granted" and he "need not give any reason for so refusing") with Section XI (under the new licensing scheme, when there is a decision to suspend or revoke a license the Registrar must give notice of intent to revoke, specifying the grounds and giving the licensee an opportunity to submit written objections).

Thomas–Lazear maintains that the review process guaranteed by section XI should have applied to her application for renewal of an existing license, and that under that scheme the Registrar did not have unbridled discretion. If there is not unbridled discretion there may be a property right. *See Bishop*, 426 U.S. at 345, 96 S.Ct. at 2077; *Goodisman*, 724 F.2d at 820. The Government contends Thomas–Lazear was seeking a new license and the Registrar has the absolute discretion of section IV, and thus the regulations do not give rise to a property right under *Bishop*.

In fact, Thomas–Lazear sought renewal of an existing license and the applicable procedures are in section VI, which does not state a standard or limitation on the Registrar's discretion. Section VI(6) does say, however, that a bank that makes a timely renewal application "may continue to operate until such time as the Registrar issues a *new* license or advises the rejection of the application" (emphasis added). This leads us to conclude that all old licenses expired on February 28, 1985 and that only new licenses existed thereafter—licenses that could be granted or denied solely at the Registrar's discretion under section IV.

Thomas–Lazear did not have a protected property interest in the license based on the Off–Shore Banking Regulations.

■ Thomas–Lazear also claims she relied on representations of Raymond Carter (then Registrar of Corporations), Toke Saweg (the government representative on the bank's board of directors), and officers of W.F.I. Corp. that EOBL had the right to perpetual existence, and that her reliance created a protected property interest. This argument is without merit. These individuals had no authority to bind the Marshall Islands, with the exception of the Regis-

trar, who held office for only a limited term. Further, reliance on such statements is not reasonable when the purchase agreement puts the purchaser on notice that laws may change and will be binding, and the laws in fact do change. Thus, we conclude that Thomas–Lazear did not have a protected property interest based on any official assurances.

██ Thomas–Lazear has also failed to make out a claim of deprivation of a liberty interest. *See Paul v. Davis*, 424 U.S. 693, 709–710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). She and Reed have not made a showing of any injury to reputation or their ability to earn a living. *See Roth*, 408 U.S. at 573, 92 S.Ct. at 2707 (unless employment termination foreclosed freedom to take advantage of other employment opportunities the termination does not implicate a constitutionally protected liberty interest).

The district court properly granted summary judgment for the federal officials because Thomas–Lazear had neither a property nor a liberty interest in the bank license. Because we affirm summary judgment on these grounds, we do not address the question of qualified immunity.

## II. Leave to Amend

Denial of leave to amend after a responsive pleading has been filed is reviewed for abuse of discretion, *Klamath–Lake Pharmaceutical Ass'n. v. Klamath Medical Service Bureau*, 701 F.2d 1276, 1292 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983), but such denial is "strictly" reviewed in light of the strong policy permitting amendment, *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir.1986).

The district court refused to allow Thomas–Lazear to add the United States as a party because it concluded that the claims sought to be asserted—invasion of privacy and negligent infliction of emotional distress—are barred by 28 U.S.C. § 2680(h), which lists the following exceptions to tort liability:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

██ On appeal, Thomas–Lazear does not press her argument for the invasion of privacy claim, but argues only that the claim for negligent infliction of emotional distress should have been permitted, because section 2680(h) bars only intentional torts. The district court found, and the Government argues that the essence of the claim is the spreading of slanderous statements and that it is thus barred by section 2680(h). We agree.

Thomas–Lazear argues that the negligent infliction of emotional distress claim arises from conduct other than that barred by section 2680(h). The complaint states that the negligent infliction claim incorporates the allegations of all the other claims. Having conceded that the acts alleged in the claims for slander, invasion of privacy and tortious interference with contractual relations cannot be the basis for a tort claim against the United States because of section 2680(h), Thomas–Lazear contends that the separate allegations of the fifth cause of action, which she denominates the *"Bivens* tort," may serve as the basis for the negligent infliction of emotional distress claim. There are at least four flaws in this argument.

First, the *Bivens* claim alleges only the intentionally tortious conduct already identified, conduct that is clearly barred by section 2680(h).

Second, Thomas–Lazear attempts to fashion the slander and libel claims into a claim for negligent infliction of emotional distress by saying the officials were negligent in not foreseeing the effect of their slander in causing emotional distress to Thomas–Lazear and Reed. This is nothing more than an effort to remove the damage element from an intentional tort barred by section 2680(h) and plead it separately as negligent infliction of emotional distress. Thomas–Lazear makes this effort based on her argument that section 2680(h) bars liability for intentional but not negligent torts. This is not precisely true, as the Supreme Court has implied that section

2680(h) bars claims arising out of either negligent or intentional commission of the enumerated torts. *See United States v. Neustadt*, 366 U.S. 696, 706–707, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961) (claim for negligence barred as actually stating a claim for negligent misrepresentation). This circuit looks beyond the labels used to determine whether a proposed claim is barred. *See, e.g., Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986); *Leaf v. United States*, 661 F.2d 740, 742 (9th Cir.1981) (negligence claims actually misrepresentation), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). In this case, the claim for negligent infliction of emotional distress is nothing more than a restatement of the slander claim, which is barred by section 2680(h). Put another way, the Government's actions that constitute a claim for slander are essential to Thomas–Lazear's claim for negligent infliction of emotional distress. *See Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir.1986) (concluding there is no difference in acts underlying claims for false arrest and intentional infliction of emotional distress), *cert. denied*, —— U.S. ——, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986). Here, as in *Metz*, "[t]here is no other government conduct upon which such claims can rest." *Id.*

▪ Third, even if other actions can be identified that led to the alleged constitutional deprivation, the United States has not waived its sovereign immunity in actions seeking damages for constitutional violations. *United States v. Testan*, 424 U.S. 392, 400–402, 96 S.Ct. 948, 954–955, 47 L.Ed.2d 114 (1976). The *Bivens* remedy exists against individual officials, not against the United States. Merely calling the cause of action a *"Bivens* tort" does not permit Thomas–Lazear to transplant a remedy for constitutional violations into the FTCA and thereby attempt to avoid the barrier of sovereign immunity.

Finally, even if such a transplant were possible, because we have decided that Thomas–Lazear has no constitutionally protected interest in renewal of the bank license, the effort to extend liability to the United States for the emotional distress resulting from loss of the license must also fail.

The district court did not abuse its discretion in denying the motion to amend.

The judgment of the district court is AFFIRMED.