996 F.2d 1224
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ESR INVESTMENTS, LTD., Plaintiff-Appellant,
v.
David A. FONTANA; Thelma L. Fontana; Jack E. Fontana;
Mary A. Fontana; Richard Rockwell; David S.
Thomas; Rockwell & Rogers; Chicago
Title Insurance Company,
Defendants-Appellees.
 No. 90-15712.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 17, 1992.
Decided June 25, 1993.
As Corrected on Denial of Rehearing Aug. 17, 1993.
 
 Before: ALARCON, BOOCHEVER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 ESR Investments Ltd. ("ESR") appeals the district court's order granting summary judgment in favor of David A. Fontana, Thelma L. Fontana, Jack E. Fontana and Mary A. Fontana (collectively "Fontanas"); Richard Rockwell, David Thomas, and Rockwell & Thomas (collectively "Rockwell"); and the Chicago Title Company ("Chicago"). ESR also appeals the district court's order denying ESR's motion for reconsideration and its request for leave to amend. The district court had jurisdiction pursuant to 26 U.S.C. § 1332. This court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 STATEMENT OF THE CASE
 
 3
 Big Break Resorts, Inc. ("BBR") was formed by the Fontanas to own and operate a marina and resort property in Contra Costa County, California. In 1975, the Fontanas sold the marina and resort property to Big Break Marina, Inc. ("BBM") for cash and an $835,000 promissory note due August 29, 1990 ("Promissory Note 2"). Promissory Note 2 was secured by a deed of trust on the marina and the resort property.
 
 
 4
 On January 23, 1980, the Fontanas entered into a stock purchase agreement ("Stock Purchase Agreement") with Commonwealth Computer Services ("CCS"). The Fontanas sold all of the stock of BBR to CCS in return for $5,000 in cash and a $715,000 promissory note due November 1, 1994 ("Promissory Note 1"). Promissory Note 1 was secured by a pledge of all of the stock of BBR as well as an assignment for security of BBR's only assets: Promissory Note 2 and the deed of trust securing Promissory Note 2.
 
 
 5
 The Stock Purchase Agreement also provided security for the repayment of Promissory Note 1 after repayment of Promissory Note 2. The parties agreed that when BBM or any of its successors or assigns made payment on the principle of Promissory Note 2 which required reconveyance of the deed of trust securing the note, CCS or any of its successors or assigns would place in escrow sufficient funds to insure payment of Promissory Note 1. Once the funds were deposited, the parties agreed that the account would be pledged or assigned to the Fontanas as security for payment of Promissory Note 1.
 
 
 6
 In December 1980, CCS entered into an agreement with ESR under which CCS granted ESR a security interest in Promissory Note 2 in return for a loan ("Agreement for Assignment"). The Agreement for Assignment also provided that the assignment was to take effect as of the payoff date of Promissory Note 2 (August 29, 1990) or sooner should BBM sell its assets. Moreover, the assignment was subject to CCS' continuing obligations under the Stock Purchase Agreement.
 
 
 7
 In June 1987, BBM was sold to the Dupont Corporation and Promissory Note 2 was paid in full. Of the proceeds from the note payment, $567,000 was owed to the Fontanas under Promissory Note 1. The residual amount belonged to CCS, but because CCS had defaulted on its loan payments its share was properly paid to ESR pursuant to the Agreement for Assignment.
 
 
 8
 Complicating matters was ESR's claim that it was also entitled to the beneficial use of the $567,000 owed to the Fontanas. ESR contended that in the Agreement for Assignment, CCS assigned its rights in these proceeds to ESR. Thus, because the Stock Purchase Agreement did not require CCS to make final payment on Promissory Note 1 until 1994, ESR argued that it had the right to enjoy the beneficial use of the $567,000 until that time.
 
 
 9
 When the Fontanas refused to recognize ESR's claim and turn over the $567,000, ESR filed suit. The defendants promptly moved for summary judgment. The district court granted their motion, finding that ESR did not have standing to sue under the Stock Purchase Agreement.
 
 
 10
 ESR filed a motion for reconsideration under Federal Rule of Civil Procedure 59 attempting to introduce evidence of an agreement between ESR and CCS purportedly assigning all of CCS' contract rights to ESR as security for the repayment of loans made to CCS by ESR ("Revolving Loan Agreement"). The district court denied ESR's motion for reconsideration. It found that the Revolving Loan Agreement did not grant ESR a security interest in the contract rights which CCS enjoyed under the Stock Purchase Agreement. According to the district court, both the language of the document and deposition testimony cast doubt on the claim that the Revolving Loan Agreement granted ESR the right to assert CCS' rights under the Stock Purchase Agreement.
 
 
 11
 In addition to the motion for reconsideration, ESR requested leave to amend its complaint. ESR wanted to make the additional argument that it was a third party beneficiary of the Stock Purchase Agreement, and as a result had standing to sue under the agreement. The district court denied ESR's motion for leave amend, concluding that there was no evidence to support ESR's claim that it was a third party beneficiary.
 
 STANDARD OF REVIEW
 
 12
 This court reviews a district court's decision granting summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 629 (9th Cir.1987). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-1340 (9th Cir.1989).
 
 
 13
 This court reviews a district court's decision denying a motion for reconsideration under Federal Rule of Civil Procedure 59 for abuse of discretion. Fiester v. Turner, 783 F.2d 1474, 1475-76 (9th Cir.1986). Similarly, this court reviews denials of leave to amend for abuse of discretion. Thomas-Lazear v. FBI, 851 F.2d 1202, 1206 (9th Cir.1988). However, such denial is "strictly" reviewed in light of the strong policy permitting amendment. Id. (citing Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.1986)).
 
 DISCUSSION
 I. Standing
 
 14
 ESR argues that the district court erred in granting summary judgment in favor of the Appellees on the ground that ESR did not have standing to sue. ESR concedes that it is not an original party to the Stock Purchase Agreement. However, it contends that the Agreement for Assignment gives it the power to enforce CCS' rights under the Stock Purchase Agreement. ESR advances several theories in support of its claim.
 
 A. Assignment
 
 15
 ESR's principal argument is that it has standing to sue because it is an assignee of CCS' rights under the Stock Purchase Agreement. In the Agreement for Assignment, CCS agreed to assign its "current interest" in the Stock Purchase Agreement to ESR. ESR contends that this effectively transferred all of the benefits associated with Promissory Note 2 from CCS to ESR. This included the right, upon payment of Promissory Note 2, to receive the note proceeds in excess of the amount due the Fontanas under Promissory Note 1, and the right to receive the beneficial use of the money still owed to the Fontanas.
 
 
 16
 We disagree. An assignment is only valid if the owner of the right manifests a present intent to make a transfer of the right without further action by the parties. United California Bank v. Behrends, 251 Cal.App.2d 720, 725 (1967). While the Agreement for Assignment contemplates assignment of CCS' rights under the Stock Purchase Agreement, it does not assign that interest immediately. Rather, the assignment is to take place at a later date after CCS receives the payoff, and only in the event that CCS defaults on its obligation to ESR. Because the language of the Agreement for Assignment does not evidence a present intent to transfer CCS' rights without further action, it cannot be considered a valid assignment. Thus, we hold that the district court correctly found that ESR was not an assignee of CCS' rights under the Stock Purchase Agreement.
 
 B. Foreclosure of Security Interest
 
 17
 Rather than an assignment, the Agreement for Assignment is more properly understood as a security arrangement. It gives ESR a security interest in CCS' rights under the Stock Purchase Agreement. This is evidenced by the title of the agreement,[1] by the language of the agreement, and by statements contained in Appellant's briefs.[2]
 
 
 18
 Accepting this interpretation, ESR argues that it has standing to sue under the Stock Purchase Agreement because it perfected its interest in the agreement before it brought suit against the Appellees. ESR claims that after CCS defaulted on its loan obligations, it attempted to assemble its collateral without judicial procedure, an approach sanctioned by California Commercial Code § 9503. ESR explains that no foreclosure suit was necessary because this attempt was not resisted by CCS. Quite to the contrary, ESR points to evidence that CCS pledged to cooperate with it in this litigation as part of a settlement of claims between ESR and CCS.
 
 
 19
 We find ESR's claims unpersuasive. First, they were made for the first time after summary judgment was entered and they are unsupported by any evidence in the record. Second, ESR only indicates that an attempt was made to assemble collateral. The ultimate success of this effort is not detailed. Finally, and most importantly, nowhere in the briefs or the record is there an explicit statement that CCS assigned its rights under the Stock Purchase Agreement after it defaulted on its obligations. Thus, we conclude that the district court correctly found that ESR did not acquire standing by foreclosing on its security interest in Promissory Note 2.
 
 C. Third Party Beneficiary
 
 20
 In addition to arguing that it is an assignee of the Stock Purchase Agreement and that it perfected its security interest in the Stock Purchase Agreement, ESR contends that it has standing to sue because it is a third party beneficiary of the agreement. ESR cites California Civil Code § 1559 for the principle that a contract made expressly for the benefit of a third person may be enforced by that person anytime before it is rescinded. It then states that CCS intended to benefit ESR by entering into the Stock Purchase Agreement.
 
 
 21
 ESR is correct in arguing that a third party beneficiary of a contract has standing to sue under that contract. However, this theory does not help ESR here. As an initial matter, although ESR did argue it was a third party beneficiary in its motion for leave to file its amended complaint, it did not raise this issue in the summary judgment proceedings below. As a general rule, this court will not consider issues raised for the first time on appeal. United States v. Greger, 716 F.2d 1275, 1277 (9th Cir.1983). Certain narrow and discretionary exceptions to this rule have been recognized. However, none of them apply in this case. The issue of whether ESR is a third party beneficiary of the Stock Purchase Agreement could have been raised earlier and is not a pure question of law. Moreover, there is no evidence of plain error which might otherwise result in injustice if this issue is not addressed. See United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991).
 
 
 22
 In any event, we find that ESR's claim that it is a third party beneficiary of the Stock Purchase Agreement is meritless. In its brief, ESR admits that it only considered this claim after reading a footnote in the order denying summary judgment where the district court mentions that it is an argument that ESR did not assert. Moreover, the Stock Purchase Agreement does not give any indication that it was made expressly for the purpose of benefitting ESR. ESR is not mentioned in the Stock Purchase Agreement and there is no evidence suggesting that the Fontanas ever understood that CCS intended to benefit ESR at the time the agreement was made.
 
 II. Motion for Reconsideration
 
 23
 ESR argues that district court erred in denying its motion for reconsideration. In particular, ESR contends that the collateral in the Revolving Loan Agreement was adequately described to satisfy the requirements of California Commercial Code § 9203(1)(a). Moreover, ESR suggests that the district court misinterpreted deposition testimony which indicated that the Revolving Loan Agreement did not cover the Stock Purchase Agreement. Finally, ESR argues that the language of the Revolving Loan Agreement does not prevent it from encompassing the Stock Purchase Agreement.
 
 
 24
 ESR bears a heavy burden when it appeals an order denying a motion for reconsideration. These decisions will only be overturned on a clear showing of abuse of discretion. Pena v. Sequeros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir.1985). ESR does not meet this burden here. The district court's findings are well reasoned and sufficiently accurate to withstand scrutiny.
 
 
 25
 Furthermore, there is no reason why the Revolving Loan Agreement could not have been introduced earlier. It is not newly discovered evidence, but instead was entered into at approximately the same time as the Agreement for Assignment. ESR is completely responsible for this omission, and the interests in finality and judicial economy will not be sacrificed as a result.
 
 
 26
 This is especially true given that introduction of the Revolving Loan Agreement adds nothing to the resolution of this appeal. Assuming arguendo that the Revolving Loan Agreement applies to the Stock Purchase Agreement, it has the same effect as the Agreement for Assignment. It simply gives ESR a security interest in CCS' rights under the Stock Purchase Agreement. In order to survive summary judgment, ESR must still produce evidence suggesting that it took possession of these rights after CCS defaulted on its obligations. There is absolutely no indication that this occurred.
 
 III. Request for Leave to Amend
 
 27
 ESR argues that the district court erred in denying its request for leave to amend its complaint. We disagree. ESR has already amended its complaint once as a matter of course. It wants to amend its complaint again in order to argue that it has standing to sue because it is a third party beneficiary of the Stock Purchase Agreement. For the reasons mentioned earlier, this argument is meritless. Thus, because granting leave to amend to assert this theory of standing would be futile, we find that the district court did not abuse its discretion in denying ESR's request.
 
 CONCLUSION
 
 28
 We hold that the district did not err in granting summary judgment in favor of the Appellees on the ground that ESR does not have standing to sue. ESR was not an original party, assignee, or third party beneficiary of the Stock Purchase Agreement. Nor is there any evidence to suggest that it foreclosed on its security interest in Promissory Note 2. In addition, we hold that the district court did not err in denying ESR's motion for reconsideration and its request for leave to amend. For the foregoing reasons, the district court's orders are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The full title of the agreement is "Agreement for Assignment of Note Receivable From Big Break Marina, Incorporated As Security for Loans to Commonwealth Computer Services, Inc. From ESR Investments, Limited."
 
 
 [2]
 ESR describes the Agreement for Assignment as a security arrangement on numerous occasions. Appellant's Opening Brief at 8, 26