24 F.3d 246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Alan R. FORSHA, Plaintiff-Appellant,
v.
SOLDER REMOVAL COMPANY; Roe Corporation, Defendants-Appellees.
 No. 92-56010.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided May 2, 1994.
 
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff/Appellant Alan Forsha ("Forsha") appeals from the orders of the district court deeming certain matters to be without substantial controversy and denying him leave to file an amended complaint. For the reasons stated herein, we affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 In January 1989, Solder Removal Company's ("Solder") primary stockholder and Chief Executive Officer, Jesse Hood ("Hood"), entered into an oral employment agreement with Forsha. On condition that Forsha immediately leave his current employment and begin work for Solder as Vice President in charge of manufacturing operations, Hood orally promised to pay Forsha a starting salary of $70,000 per year, an annual bonus, participation in a profit-sharing or pension plan, and a stock ownership interest in Solder. Forsha informed Hood at this time that he was interested in long term employment, and Hood allegedly agreed that Forsha's employment "was permanent for so long as [Forsha] continued to perform his duties satisfactorily." Hood also agreed, on behalf of Solder, that if Forsha invented anything Solder would pay him royalties according to terms to be negotiated on an individual basis.
 
 
 4
 Forsha left his previous employment and began working for Solder on February 1, 1989. On March 30, 1990 Solder paid Forsha $13,384, a portion of the $58,190 bonus that it owed him. Solder allegedly agreed to pay the balance as deferred compensation, including payment in the form of future stock acquisitions. In July 1990, Forsha received a salary increase to $80,000 per year. During his employment with Solder, Forsha invented various items, the rights to which he assigned to Solder in return for promises of royalty payments.
 
 
 5
 In about June 1990, Hood decided to sell Solder and soon thereafter commenced negotiations with a prospective buyer. In August 1990, Forsha became temporarily disabled and filed a claim with the Workers' Compensation Appeals Board. In November 1990, Solder asked Forsha to sign a written Employment Agreement which characterized Forsha's employment with Solder as "at-will" and required Forsha to relinquish all rights to any of his inventions or to the royalty agreements previously concluded between Forsha and Solder. Forsha refused to sign this agreement. On November 13, 1990, Solder terminated Forsha's employment.
 
 
 6
 On December 14, 1990, Forsha filed the instant action against Solder alleging, inter alia, breach of contract and wrongful termination. Forsha alleged that Solder breached its contract not to terminate him except for cause and that Solder violated public policy by discharging him for refusing to dismiss his workers' compensation claim. The case was removed to federal court on the basis of a federal pension claim. The district court held a status conference and established a discovery cut-off date of November 29, 1991, set a pretrial conference date for January 6, 1992, and set a trial date for February 11, 1992.
 
 
 7
 On December 31, 1991, the district court granted Solder's motion for an order deeming certain matters to be without substantial controversy. The court stated that Forsha could not maintain a claim for breach of contract because his employment agreement did not state that he would be terminated only for cause. The court also found that Forsha could not maintain a wrongful termination claim for discharge motivated by his refusal to withdraw a workers' compensation claim, because his exclusive remedy for such a discharge is a proceeding before the California Workers' Compensation Appeals Board.
 
 
 8
 In his opposition to the motion, Forsha argued that Solder had breached its implied contract not to terminate him except for good cause and that his termination was wrongful because it violated California Labor Code Secs. 2870 and 2871.[1] The district court rejected both of these arguments, stating that Forsha had not alleged either an implied contract theory of recovery or a Labor Code Sec. 2870-2871 theory of recovery in his complaint and that his attempt to raise them was now untimely. Additionally, the district court held that Forsha had neither established the prerequisites for an implied contract theory nor submitted evidence showing that any of his inventions fell within the scope of Labor Code Secs. 2870 and 2871.
 
 
 9
 The district court continued the pretrial conference date from January 6 to January 27, 1992. On January 10, 1992, Solder filed a memorandum of contentions of fact and law, a witness list, and an exhibit list. On January 16, 1992, Solder submitted a proposed pretrial conference order.
 
 
 10
 On January 27, Forsha moved for leave to file a first amended complaint asserting, inter alia, breach of contract and wrongful termination of employment (in violation of Labor Code Secs. 2870 and 2871). The district denied Forsha's motion on February 20, 1992, ruling that: (1) Forsha had unduly delayed filing his proposed amended complaint and that Forsha should have known of the claims at the time he filed his original complaint; (2) allowing the amendment would cause substantial prejudice to Solder, since it would have no opportunity to conduct discovery regarding the newly asserted claims and would have to substantially revise its pretrial documents; and (3) allowing the amendment would be futile.
 
 
 11
 The district court entered a pretrial conference order on February 3, 1992, specifying the legal and factual issues to be tried. The court continued the trial to June 9, 1992 because of a pending criminal trial.
 
 
 12
 On February 7, 1992 Forsha filed a second motion for leave to file an amended complaint. This motion sought to raise the same claims as the January 27th motion. The district court again denied the motion, finding that allowing the amendment after discovery cut-off would prejudice Solder. On June 9 and 10, 1992, the parties tried the remaining issues before the district court.
 
 
 13
 Forsha appeals the district court's orders contending that his original complaint pled a breach of implied contract theory and that the district court abused its discretion in denying Forsha leave to file an amended complaint.
 
 STANDARD OF REVIEW
 
 14
 A motion for an order deeming issues to be without substantial controversy is a summary judgment motion under Federal Rule of Civil Procedure 56(d). We review the district court's grant of summary adjudication de novo, Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987), and we are governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kinchloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 15
 We review for abuse of discretion the district court's denial of leave to amend after a responsive pleading has been filed. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991); Thomas-Lazear v. FBI, 851 F.2d 1202, 1206 (9th Cir.1988). Such a denial, however, is "strictly" reviewed in light of the strong policy permitting amendment. Texaco, 939 F.3d at 798; Thomas-Lazear, 851 F.2d at 1206.
 
 DISCUSSION
 I.
 
 16
 Order Deeming Issues to be Without Substantial Controversy
 
 
 17
 Forsha argues that the district court improperly granted Solder's motion for an order deeming issues to be without substantial controversy. The court ruled that Forsha had not and could not, on the facts, state a claim for breach of an implied-in-fact contract. While Forsha admits that he did not reach an express agreement with Solder that his employment could not be terminated except for good cause, he argues that his original complaint pled the existence of an implied contract on the basis of allegations of a course of conduct evidencing the existence of an implied contract.
 
 
 18
 California law establishes a presumption that "an employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal. Labor Code Sec. 2922 (West 1989). This presumption may be overcome by evidence that "the parties agreed that the employer's power to terminate would be limited in some way." Foley v. Interactive Data Corporation, 47 Cal.3d 654, 677 (Cal.1988).
 
 
 19
 In the instant action, Forsha does not allege the existence of an express contract, but rather alleges that the parties had an implied contract not to terminate except for cause. In Foley, the California Supreme Court drew a distinction between an express contract and an implied contract:
 
 
 20
 Although plaintiff describes his cause of action as one of an oral contract, he does not allege explicit words by which the parties agreed that he would not be terminated without good cause. Instead he alleges that a course of conduct, including various oral representations, created a reasonable expectation to that effect. Thus, his cause of action is more properly described as one for breach of an implied-in-fact contract. [footnote omitted]
 
 
 21
 Id. at 675 (emphasis added).
 
 
 22
 In determining whether the facts indicate the existence of an implied promise not to discharge an employee except for good cause, the trier of fact must look at the totality of the circumstances. Id. at 681. The factors to consider include, but are not limited to, the terms of the employment manual, the employer's personnel policies or practices, the longevity of plaintiff's service, acts or communications by the employer reflecting assurances of continued employment, and whether plaintiff has received consistent promotions or salary increases. Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 776 (9th Cir.1990) (citing Foley, 47 Cal.3d at 680).
 
 
 23
 The cases interpreting Foley and finding an implied contract not to terminate have typically involved employment relationships lasting substantially longer than the twenty-two months involved in the instant action. In Miller v. Pepsi-Cola Bottling Co., 210 Cal.App.3d 1554 (Ct.App.1989), the Court of Appeal upheld the trial court's grant of summary judgment rejecting an implied contract theory. The plaintiff in Miller worked for the defendant for five years and received numerous raises and promotions, but did not receive oral assurances of continued employment and could not establish any policies of termination only for cause. The Court of Appeal held that absent oral assurance of continued employment or policies of termination only for cause, an employee having only five years' tenure in a position could not, as a matter of law, maintain an implied contract claim. Promotions and salary increases alone can not change the status of an at-will employee to one dischargeable only for cause. Id. at 1559.
 
 
 24
 In Schneider v. TRW, Inc., 938 F.2d 986 (9th Cir.1991), we upheld the district court's grant of summary judgment rejecting plaintiff's claims of breach of implied contract and breach of implied covenant of good faith and fair dealing, because plaintiff had not received express assurances of continued employment, had worked for defendant for only a short period of time, and could not establish a policy of termination only for cause. Id. at 990.
 
 
 25
 In contrast, in Pugh v. See's Candies, Inc., 116 Cal.App.3d 311 (Ct.App.1981), the plaintiff had been employed by the defendant for 32 years and had worked his way up the corporate ladder. He was assured that "if you are loyal ... and do a good job, your future is secure." Id. at 317. The company maintained a practice of not terminating administrative personnel except for good cause. Furthermore, plaintiff had received promotions and commendations for his work with no significant criticisms. On these facts, the Court of Appeal concluded that the jury could determine the existence of an implied promise not to arbitrarily terminate plaintiff's employment. Id. at 329.
 
 
 26
 In Hentzel v. Singer Co., 138 Cal.App.3d 290 (Ct.App.1982), the court distinguished Pugh, noting the substantial length of employment, the assurances of security, and the express termination policy in Pugh compared to Hentzel's mere allegation that "defendants 'implied' that he would not be terminated so long as the services he performed were satisfactory." The court held that the plaintiff had "not alleged facts sufficient to support such an implication." Id. at 304.
 
 
 27
 In Foley, plaintiff worked for defendant for six years and nine months, over which period he received a steady series of salary increases, promotions, bonuses, awards, and superior performance evaluations. 47 Cal.3d at 663. Plaintiff also received repeated oral assurances of job security on the condition that his performance remain adequate. Id. Defendant maintained a termination policy which explicitly set forth the grounds and procedure for discharge. The California Supreme Court concluded that the plaintiff pled facts which, if proved, "may be sufficient for a jury to find an implied-in-fact contract limiting defendant's right to discharge him arbitrarily--facts sufficient to overcome the presumption of Labor Code section 2922." Id. at 682. See also Cleary v. American Airlines, 111 Cal.App.3d 443 (Ct.App.1980) (termination of plaintiff employed for eighteen years without legal cause offends the implied-in-law covenant of good faith and fair dealing contained in all contracts).
 
 
 28
 In the instant action, Forsha stated that he received a salary increase from $70,000 per year to $80,000 per year in July 1990, that he was repeatedly praised and commended, and that he received a bonus for 1989, $29,124 of which was attributable to future stock acquisitions in Solder. The allegation of such factors in an employment relationship of less than two years, and in the absence of an express employment termination policy, is not sufficient to maintain the claim of an implied-in-fact contract to terminate only for good cause.
 
 
 29
 In addition, the severance agreement to which the parties agreed, which provided for 60 days' wages whether or not there was cause to terminate, limits Forsha's monetary damages to those 60 days of wages. The existence of this agreement also refutes the allegation of an implied-in-fact contract, because it implicitly recognized that termination without cause was permissible in this employment relationship.
 
 
 30
 Finally, the proposed employment agreement whereby Forsha would agree that his employment with Solder was at-will does not indicate that his employment was previously otherwise; Solder's request that Forsha sign such an agreement could just as easily have represented Solder's attempt to clarify its employment records prior to the sale of the company.
 
 II.
 
 31
 Denial of Forsha's Motion for Leave to File an Amended Complaint
 
 
 32
 Federal Rule of Civil Procedure 15(a) states that after a responsive pleading is served "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Forsha twice sought leave to file an amended complaint stating causes of action for breach of implied contract, breach of implied covenant of good faith and fair dealing, and tortious termination in violation of public policy as stated in Labor Code Secs. 2870 and 2871. The district court denied Forsha's motions on the grounds of untimeliness, prejudice to Solder, and futility.
 
 
 33
 We may reverse the district court decision only if we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors, United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992); Nilsson v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988), and we cannot simply substitute our judgment for that of the lower court. United States v. Egbuniwe, 969 F.2d 757, 761 (9th Cir.1992); United States v. BNS, Inc., 858 F.2d 456, 463 (9th Cir.1988).
 
 
 34
 A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of a material fact. United States v. Rahm, 993 F.2d 1405, 1410 (9th Cir.1993); Northern Alaska Environmental Center v. Lujan, 961 F.2d 886, 889 (9th Cir.1992). A trial court may also abuse its discretion when the record contains no evidence to support its decision. MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1122 (9th Cir.1991); United States v. Schlette, 842 F.2d 1574, 1577 (9th Cir.), amended, 854 F.2d 359 (9th Cir.1988).
 
 
 35
 The district court ruled that Forsha unduly delayed seeking to file his amended complaint in that he did not make the motion until after discovery cut-off, after the granting of a motion for an order deeming Forsha's discharge related claims to be without substantial controversy, after the filing of memoranda of contentions of fact and law, witness lists, and exhibit lists, and only 15 days prior to the original trial date. In fact, Forsha filed the first such motion on the date of the pretrial conference.
 
 
 36
 Forsha does not contest the district court's finding of untimeliness but claims that delay alone does not provide sufficient grounds for denying leave to amend when there is a lack of prejudice to the opposing party and the amended complaint is not frivolous or made as a dilatory maneuver in bad faith. Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of So. California, 648 F.2d 1252, 1254 (9th Cir.1981).
 
 
 37
 Forsha argues that filing an amended complaint would not have prejudiced Solder because the tortious termination cause of action in his amended complaint was based upon facts alleged in his original complaint, and he changed only the theory upon which recovery was sought. Forsha's amendment alleged a violation of Labor Code Secs. 2870 and 2871; Forsha argues that Solder was aware of these causes of action, because in its answer Solder contended that Forsha had no rights in the inventions at issue (the "Wonder Web" and the "Wonder Worm") and because Solder alleged in its counterclaim that Forsha developed these inventions on company time and with company materials. Therefore, Forsha believes that Solder had already conducted sufficient discovery on the Labor Code Secs. 2870 and 2871 cause of action.
 
 
 38
 However, even if Solder raised issues related to the Wonder Web and the Wonder Worm, it did not explore either of those inventions in any meaningful detail. If these inventions became a centerpiece of the litigation, Solder would have to conduct significantly more discovery. For example, Solder would have to reopen Forsha's deposition and depose former employees who worked with Forsha to uncover all facts pertinent to a Labor Code Sec. 2870 theory. In addition, Solder would have to substantially revise and resubmit all of its pretrial documents, including the exhibit list, memorandum of contentions of fact and law, and proposed pretrial conference order. In so doing, Solder would incur significant additional costs.
 
 
 39
 We have held in a similar situation that the reopening of discovery in itself constituted cognizable prejudice. McGlinchy v. Shell Chemical Co., 845 F.2d 802, 809 (9th Cir.1988). In McGlinchy, the trial court vacated the trial date after discovery had closed. Plaintiff then proposed an amendment which would have required reopening discovery and revision of already submitted pretrial documents. We upheld the denial of leave to amend, stating that "[t]he resulting delay and expense would have prejudiced Shell Oil defendants who were entitled to rely on a timely close of discovery." Id. at 809. In light of the timing of Forsha's motion to amend and the subsequent discovery which Solder would have to conduct, the district court did not abuse its discretion in finding that allowing Forsha leave to amend would prejudice Solder.
 
 
 40
 As an additional ground for denying Forsha leave to file an amended complaint, the district court found that allowing the amendment would be futile because Forsha made no showing that any specific invention fell within the scope of Labor Code Secs. 2870 and 2871 and because the uncontroverted facts established that Forsha had assigned the inventions at issue in the litigation to Solder long before his discharge. Therefore, under the facts as pled, Forsha could not maintain a Labor Code Secs. 2870 and 2871 claim. We have recognized futility as a valid basis for denial of leave to amend a pleading. California Arch. Bldg. Products v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988).
 
 
 41
 The pleadings support the district court's finding that Forsha had assigned his rights in the two inventions at issue long before his termination and long before the alleged threat to discharge him if he did not assign those rights. Forsha admitted that he never contested Solder's right to the inventions; rather, he only claimed rights to receive royalty payments for them. Although Forsha provided some evidence that he developed the inventions on his own time and on his own premises without the use of Solder's materials, the record supports the district court's conclusion that there was no triable issue here.
 
 
 42
 The district court also did not abuse its discretion in denying Forsha's motion for leave to file an amended complaint merely because it continued the trial to early June from the original February 11 trial date. Solder would still have had to conduct additional discovery and revise and resubmit its pretrial documents, thus incurring substantial prejudice.
 
 
 43
 Finally, Forsha argues that evidence submitted during trial was sufficient to support an amendment to conform to proof. Federal Rule of Civil Procedure 15(b) allows for an amendment to conform to the evidence presented at trial and such amendment "may be made upon motion of any party at any time, even after judgment." Fed.R.Civ.P. 15(b). However, what was litigated at the trial concerned Forsha's royalty agreement claims with respect to three inventions: the surmo wick, the optima braid, and the ultra braid. It was with respect to these inventions and not the Wonder Web and Wonder Worm that the district court made findings of fact and conclusions of law. The fact that the district court admitted some evidence that mentioned the inventions at issue with respect to the Labor Code Sec. 2870 claim does not support an amendment to conform to proof. Unless the parties actually try the issues supporting a theory, as opposed to merely submitting evidence which may bear upon that theory, an amendment to conform to proof is not proper. Gonzales v. United States, 589 F.2d 465, 469-470 (9th Cir.1979) (where issue not tried by express or implied consent of the parties, but only inferentially suggested by evidence in the record, denying amendment to conform to proof held proper). Thus, we reject Forsha's argument that the district court should have allowed his amendment to conform to proof under Federal Rule of Civil Procedure 15(b).
 
 
 44
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 California Labor Code Sec. 2870 provides:
 (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either:
 (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
 (2) Result from any work performed by the employee for the employer.
 (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.
 Cal.Labor Code Sec. 2870 (West Supp.1993).
 California Labor Code Sec. 2871 provides in pertinent part:
 No employer shall require a provision made void and unenforceable by Section 2870 as a condition of employment or continued employment.
 Cal.Labor Code Sec. 2871 (West 1989).