**Mark VAN STEENWYK and Marites Van Steenwyk, Plaintiffs,**

v.

**INTERAMERICAN MANAGEMENT CONSULTING CORPORATION, Defendant.**

**No. CS–93–219–FVS.**

United States District Court,
E.D. Washington.

Sept. 23, 1993.

Steven C. Miller, Miller & Wainwright, Cheney, WA, for plaintiffs.

Lawrence E. Hard, David S. Grossman, LeSourd & Patten, Seattle, WA, for defendant.

## ORDER

VAN SICKLE, District Judge.

**BEFORE THE COURT** is the defendant's motion to dismiss for lack of personal jurisdiction (Ct.Rec. 3). The defendant is represented by Lawrence E. Hard and David S. Grossman. The plaintiff is represented by Steven C. Miller.[1]

## I. BACKGROUND

In 1992, USAID (a government agency) requested proposals for a development project it intended to fund in Indonesia. Development Alternatives, Inc. ("DAI") organized a consortium of companies to prepare a proposal. (Affidavit of Mark Van Steenwyk (Ct. Rec. 9).) Eventually, defendant Interamerican Management Consulting Corporation ("IMCC") became a member of the consortium. (Declaration of Richard Koskella (Ct. Rec. 15).)

IMCC is a management consulting firm which is incorporated in Florida; its headquarters are in Key Biscayne. In addition, it maintains an office in Arlington, Virginia. (Declaration of Paul B. Pieper (Ct.Rec. 10) at 2.) By contrast, IMCC's contacts with Washington are limited. It does not maintain an office in this state; does not have a registered agent here; nor is it listed in any Washington telephone directory. *Id.* at 5.

Plaintiff Mark Van Steenwyk was contacted at his Medical Lake, Washington, residence by a DAI employee during April, 1992. (Van Steenwyk Affidavit at 1–2.) The DAI employee wanted to know whether he would be interested in working on the development project described above. Van Steenwyk was informed that the project would require a five-year commitment. After a series of communications spanning approximately two months, Van Steenwyk sent a letter of commitment. *Id.* at 2.

During July, 1992, Van Steenwyk received two letters from IMCC representatives. One was from a Mr. Clifton Barton, who clearly identified himself as an IMCC official. *Id.* at 2. In his letter of July 21, 1992, Mr. Barton wrote, in part, "On behalf of Interamerican Management Consulting Corporation (IMCC) I would like to express our pleasure to have you join our proposed project team as the Agribusiness Organizations Advisor for the full 5 year term of the contract." (Supplemental Affidavit of Mark Van Steenwyk (Ct.Rec. 13).)

The plaintiffs allege that these communications constitute an offer of employment, and that Mark Van Steenwyk accepted the offer. (Van Steenwyk Affidavit at 3.) They further allege that IMCC breached the agreement by hiring another person as Agribusiness Organizations Advisor. (*Id.* at 4.)

IMCC Director of Administration Paul B. Pieper denies that IMCC had any contact with the plaintiff prior to February, 1993, the date USAID awarded the project to the DAI consortium. (Pieper Declaration at 4.) Pieper implies that IMCC Junior Associate Christina Kolbjornsen was the first IMCC employee to confer with Van Steenwyk. *Id.* at 4–5.

---

1. The plaintiffs originally filed this action in Spokane County (Washington) Superior Court alleging breach of contract. The defendant removed it to federal court based upon diversity of citizenship. 28 U.S.C. § 1441; 28 U.S.C. § 1332(a)(1).

Pieper's denial notwithstanding, the Barton letter of July 21, 1992, can plausibly be construed as a confirmation of an offer of employment. In any event, it flatly contradicts Pieper's assertion that IMCC had no direct contact with the Van Steenwyk prior to February, 1993.

## II. RULING

The plaintiffs bear the burden of demonstrating personal jurisdiction. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 379 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).[2] However, since the defendant's motion is being decided solely upon affidavits, the plaintiffs may satisfy their burden by making a prima facie showing of jurisdiction. *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir.1993); *Shute,* 897 F.2d at 379.[3]

In a diversity action, the question of personal jurisdiction is governed by the law of the forum state. *Metropolitan Life Ins. Co. v. Neaves,* 912 F.2d 1062, 1065 (9th Cir.1990). When the existence of jurisdiction is challenged, two issues must be addressed: whether the forum state's long-arm statute confers personal jurisdiction; and whether invoking jurisdiction is consistent with principles of due process. *See Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977); *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir.1977).

Under Washington's long-arm statutes, personal jurisdiction may be either general or specific. *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 850–51 (9th Cir. 1993). RCW 4.28.080(10) creates general jurisdiction. *See Hein v. Taco Bell, Inc.,* 60 Wash.App. 325, 328, 803 P.2d 329 (1991). RCW 4.28.185 creates specific jurisdiction. *MBM Fisheries, Inc. v. Bollinger Mach.*

*Shop & Shipyard, Inc.,* 60 Wash.App. 414, 422, 804 P.2d 627 (1991).

General jurisdiction flows from a non-resident defendant's continuous, systematic business contacts with Washington. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). In such circumstances, the non-resident defendant may be required to submit to the jurisdiction of a court sitting in this forum even though the pending cause of action does not arise out of the defendant's forum-related activities. *See Rano,* 987 F.2d at 587–88; *MBM Fisheries, Inc.,* 60 Wash.App. at 418, 804 P.2d 627.

Specific jurisdiction exists, by contrast, when a court agrees to entertain a cause of action which does arise from forum-related activities. *See Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. However, specific jurisdiction may be asserted only when the non-resident defendant has had "fair warning" that its activities in Washington may subject it to the jurisdiction of courts in this forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

The plaintiffs do not seek to establish general jurisdiction over the defendant. They rely instead on RCW 4.28.185(1)(a), arguing that the Court has specific jurisdiction because their claims are based upon the defendant's business transactions in this state. (Memorandum of Authorities (Ct.Rec. 8) at 2.)

RCW 4.28.185 reaches as far as the due process clause will allow. *Shute v. Carnival Cruise Lines,* 113 Wash.2d 763, 767, 783 P.2d 78 (1989); *Deutsch v. West Coast Mach. Co.,* 80 Wash.2d 707, 711, 497 P.2d 1311, *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).[4] In fact, the test which Washington courts employ to decide

---

**2.** The Supreme Court held that the Court of Appeals erred by refusing to enforce a forum-selection clause. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, ———— ————, 111 S.Ct. 1522, 1528–29, 113 L.Ed.2d 622 (1991).

**3.** If an evidentiary hearing is held, the plaintiff must establish the existence of personal jurisdiction by a preponderance of the evidence. *Rano*

*v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir.1993).

**4.** Although a state need not assert its authority over nonresident defendants to the extent permitted by the due process clause, *see* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1075, at 482 (2d ed. 1987), Washington has chosen to do so.

the existence of personal jurisdiction under RCW 4.28.185(1)(a) is virtually identical to the specific-jurisdiction due process test utilized in this circuit. *Shute*, 897 F.2d at 380 n. 2. Because the two tests are essentially the same, the Court of Appeals has concluded that RCW 4.28.185(1)(a) establishes "no limitations beyond those imposed by due process." *Shute*, 897 F.2d at 380 n. 2. As a result, the statutory issue (*i.e.*, whether the plaintiffs' claims against the defendant fall within the scope of Washington's long-arm statute) and the constitutional issue (*i.e.*, whether invoking specific personal jurisdiction is consistent with due process) merge into a single inquiry: Is the assertion of specific jurisdiction compatible with due process? *Shute*, 897 F.2d at 380 (internal quotation marks and citation omitted). If so, personal jurisdiction may be invoked under RCW 4.28.185(1)(a).

■ This Court may exercise specific jurisdiction only if the plaintiffs can demonstrate that the defendant has established "minimum contacts" with Washington. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (internal quotation marks and citation omitted). In other words, " 'there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). The requirement that the plaintiffs show purposeful availment ensures " 'that the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.' " *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ If the plaintiffs can demonstrate "purposeful availment," the Court must then decide whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). Once the inquiry reaches that stage, it is the defendant who must "present a compelling case" that it would be unreasonable for the Court to exercise personal jurisdiction. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

■ The Court of Appeals has incorporated the due process considerations identified by the Supreme Court into a three-part test. Under this circuit's approach, specific jurisdiction does not exist unless the plaintiffs can show the following: that the defendant has purposefully availed itself of the privilege of conducting activities in Washington; that their claims arise out of the defendant's forum-related activities; and that the exercise of jurisdiction would be reasonable. *Neaves*, 912 F.2d at 1065. The three prongs of the test are conjunctive. All three must be satisfied if the Court is to exercise personal jurisdiction. *Rano*, 987 F.2d at 588.

■ With respect to the "purposeful availment" prong, the showing the plaintiffs must make depends upon whether their claims sound in tort or contract. When tort claims are involved, personal jurisdiction may be proper when the defendant's only contact with the forum state is the purposeful direction of a foreign act having an effect in the forum state. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir.1991) (internal quotation marks, citation, and emphasis omitted). A contract claim is a different matter, however. The existence of a contract between a resident of the forum state and a non-resident defendant is insufficient by itself to create personal jurisdiction over the non-resident. *Roth*, 942 F.2d at 621 (citing *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185). Whether a contract signifies purposeful availment depends upon a number of additional factors. They include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

The following decisions illustrate this circuit's approach to the question of purposeful availment in contract cases. In *Roth v. Gar-*

*cia Marquez, supra,* the plaintiff (a California film producer) attempted to persuade the defendant (a novelist residing in Mexico City) to sell the film rights to a novel he had written. For the most part, negotiations were conducted by mail, telephone, and fax. 942 F.2d at 619. The defendant novelist met with the plaintiff in California only once; and on that occasion, the meeting was not the novelist's primary reason for traveling to that state. 942 F.2d at 620.

The plaintiff argued that the novelist's letters, telephone calls, and fax transmissions supported the district court's decision to exercise personal jurisdiction. The Court of Appeals disagreed. It said that a non-resident defendant's use of mail, telephone, or other means of international communication does not ordinarily qualify as purposeful activity. 942 F.2d at 622 (internal quotation marks and citations omitted).

Given the record before it, the Court of Appeals characterized the question of purposeful availment as "a very close call," *Roth,* 942 F.2d at 622, especially since the plaintiff producer was the one who initiated negotiations, and the novelist had few physical ties to California. Nevertheless, the circuit court concluded that the plaintiff had satisfied the first prong of the test.

The Court of Appeals based that decision on the alleged contract's future consequences, noting that the contract involved production of a film. Although the movie most likely would have been filmed in a foreign country, all of the editing, production, and advertising would have occurred in California. Because the contract would have generated ongoing work in California, the Court of Appeals decided that the novelist had purposefully availed himself of the privilege of doing business in that state. *Roth,* 942 F.2d at 622.

Another example of purposeful availment is found in *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310 (9th Cir.1987). In that case, the plaintiff physician first retained the services of the defendant accountant when both resided in Kansas. Thereafter, the physician discontinued his Kansas medical practice and moved to California. Even though the physi-

cian moved, the defendant continued to act as his accountant. 823 F.2d at 312.

On those facts, the Court of Appeals ruled that the plaintiff had established purposeful availment. Since the defendant had continued to provide accounting services to the plaintiff for approximately three years after the plaintiff moved, the defendant "should have reasonably anticipated being haled into court in California for claims arising out of his employment." *T.M. Hylwa, M.D., Inc.,* 823 F.2d at 314–15.

By contrast, in *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802 (9th Cir.1988), the Court of Appeals held that one of the defendants—there were several—had not purposefully availed itself of the privilege of doing business in California. The question of personal jurisdiction arose after a California resident agreed to sell a foreign corporation's petro-chemical product in the Middle East. 845 F.2d at 805. The contract was negotiated in England, but signed in California. (Apparently, the plaintiff had invited representatives of the foreign corporation to visit its facilities, and the foreign corporation had accepted the invitation.) 845 F.2d at 816.

To demonstrate purposeful availment, the plaintiff relied upon the fact that the contract had been signed in California. 845 F.2d at 816. The Court of Appeals was unpersuaded, listing four reasons why jurisdiction could not be grounded upon the location the contract was signed. First, the "substance of the relationship" was formed in England. Second, the contract made no reference to California. Third, no part of the contract was performed in California. Fourth, the fact that the foreign corporation sent representatives to California to use and observe the plaintiff's facilities did not constitute purposeful availment since the defendant had done so at the plaintiff's invitation. *McGlinchy,* 845 F.2d at 816.

The three cases summarized above illustrate an important point. A contract typically constitutes " 'an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185 (quoting *Hoopeston Canning*

Co. v. Cullen, 318 U.S. 313, 316–17, 63 S.Ct. 602, 605–05, 87 L.Ed. 777 (1943)). Thus, when a contract is offered as the basis of personal jurisdiction, a court must examine the "economic reality" embodied in the agreement. *Roth*, 942 F.2d at 622 (citation omitted).

■ Here, the plaintiffs argue that the following factors reflect purposeful availment: (1) the defendant solicited plaintiff Mark Van Steenwyk's application, and offered the plaintiff employment; (2) the defendant sent pertinent communications to the plaintiffs' Washington residence; (3) plaintiff Mark Van Steenwyk's employment contract was effected in Washington; and (4) the plaintiffs have suffered injury in this state because the defendant breached its contractual obligations. (Memorandum of Authorities (Ct.Rec. 8) at 2, 6.)

It is clear that the defendant did not purposefully avail itself of the privilege of conducting business in Washington simply by sending communications to the plaintiffs' Washington residence. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985). However, the plaintiffs have made a prima facie showing that the defendant negotiated the substance of an employment contract with Mark Van Steenwyk while he was residing in Washington. The defendant's decision to do so is significant. *Cf. Roth*, 942 F.2d at 621–22 (question of specific jurisdiction depends, in part, upon which party initiated contact).

Nevertheless, it is undisputed that Mark Van Steenwyk was to have performed his part of the agreement in Indonesia. *Cf. McGlinchy*, 845 F.2d at 816 (non-resident defendant did not avail itself of privilege of doing business in California where the contract was formed in England and the plaintiff was to sell the defendant's product in the Middle East). Moreover, unlike both *Roth* and *T.M. Hylwa, M.D., Inc.*, the contract in issue here would not have created ongoing work in this state. In fact, no part of the contract would have been performed here.

Against that backdrop, the fact that the substance of the agreement was formed in Washington (even when combined with the injury the plaintiffs incurred when the defendant allegedly failed to perform its contractual duties) will not suffice to confer personal jurisdiction.[5] Simply put, the economic relationships created by the contract were to have found their fulfillment outside this state.

It follows that the defendant's activities in Washington were not such that it could have reasonably anticipated being "haled" into court here. That being the case, the defendant lacks the "minimum contacts" with this forum necessary to satisfy due process.[6] Thus, although the Court specifically finds that the plaintiffs' claims are neither frivolous nor malicious, the defendant's motion to dismiss must be granted.

**IT IS HEREBY ORDERED:**

1. The defendant's motion to dismiss (Ct. Rec. 3) is **granted**.

2. The plaintiffs' claims against the defendant are dismissed **without prejudice**.

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this order, furnish copies to counsel, and close the file.

---

5. *See generally, Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (fact that injury in another state is "foreseeable" is "not a 'sufficient benchmark' for exercising personal jurisdiction").

6. Since the three prongs of this circuit's specific-jurisdiction due process test are conjunctive, *see Rano*, 987 F.2d at 588, it is unnecessary to examine the two remaining prongs.